UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ING BANK N.V.** | § | **CIVIL ACTION NO. 2:15-CV-5975** |
| | § | **(LEAD)** |
| v. | § | c/w 2:15-cv-6060 (MEMBER) |
| | § | |
| **M/V BULK FINLAND, IMO No.** | § | **JUDGE LEMELLE** |
| **9691577, her engines, tackle,** | § | |
| **equipment, furniture, appurtenances,** | § | **MAGISTRATE JUDGE KNOWLES** |
| **etc.,** *in rem* | § | |
| | | **ADMIRALTY** |

**APPLIES TO CIVIL ACTION NO. 2:15-cv-6060**

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT TO DISMISS
VERIFIED COMPLAINT OF BOMIN BUNKER OIL CORP.**

MAY IT PLEASE THE COURT:

Plaintiff, ING Bank N.V. ("ING"), files this reply memorandum in support of its motion for summary judgment to dismiss the claims asserted in the Verified Complaint of Plaintiff, Bomin Bunker Oil Corp. ("Bomin"), against the M/V BULK FINLAND *in rem* filed in Civil Action No. 2:15-cv-6060. Based on the undisputed facts and the settled maritime law, this Court should grant this motion, and dismiss Bomin's Verified Complaint.

**I.   STATEMENT OF UNCONTESTED FACTS**

In connection with the motion for summary judgment, ING filed a Statement of Uncontested Material Facts contained twenty – six discrete facts, supported by the Declaration of Claus Erik Mortensen (Doc. 29-5), as well as true and correct copies of the various sales order confirmations, purchase order confirmations, invoices and receipts among Tatsuo Consulting Ltd. ("Tatsuo"), O.W. Bunker Malta Ltd. ("OW Malta"), O.W. Bunker USA, Inc. ("OW USA"), and Bomin attached to Mr. Mortensen's declaration as Mortensen Exhibits A through H (Doc. 29 – 6),. Mr. Mortensen's declaration provided the evidentiary foundation to admit each exhibit as a

1

business record, under Fed. R. Evid. 803(6).  The declaration also disclaimed any direction by Tatsuo to either OW Malta or OW USA to use Bomin to supply the bunkers.  Lastly, the Mortensen declaration negated any agency relationship between Tatsuo and OW Malta as well as OW Malta and OW USA.  Bomin submitted no evidence to controvert ING's uncontested facts.

**II.    ING HAS STANDING TO DISMISS THE CLAIMS OF BOMIN.**

Bomin has asserted that ING lacks standing to file a motion for summary judgment against it in these consolidated pleadings.  The current version of Rule 56(a) provides in part: "A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  The Advisory Committee Notes to the 2007 and 2010 amendments to Rule 56(a) eliminate any doubt that ING has standing to file its motion for summary judgment against Bomin in these consolidated proceedings.

> Former Rule 56(a) and (b) referred to summary-judgment motions on or against a claim, counterclaim, or crossclaim, or to obtain a declaratory judgment. The list was incomplete.  Rule 56 applies to third-party complaints, intervenors, claimants in interpleader and others.  Amended Rule 56(a) and (b) carry forward the present meaning by referring to a party claiming relief and a party against whom relief is sought.

Fed. R. Civ. P. 56, Advisory comm. notes, 2007 amend.

The 2010 amendments to Rule 56(a) provided further clarity as to the claims that were subject to resolution *via* summary judgment:  "The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense."  Fed. R. Civ. P. 56(a), Advisory comm. notes, 2010 amend.

As discussed, Bomin has asserted claims against the BULK FINLAND for a purported maritime lien as well as the vessel's breach of contract.  Here, a party, ING, has filed its motion for summary judgment to dismiss the claims of Bomin, another party to these consolidated

proceedings. ING's motion conforms to Rule 56(a).[1]

### III. THE COURT SHOULD NOT STAY THESE CONSOLIDATED CIVIL ACTIONS.

In its opposition memorandum, Bomin has requested this Court to stay these consolidated proceedings until the Fifth Circuit Court of Appeals has issued its decision in the recently filed appeal of *NuStar Energy Services, Inc. v. M/V COSCO AUCKLAND*, No. 17-20246. Bomin has separately filed a formal motion to stay (Doc. 34). For the reasons more fully set forth in ING's memorandum in opposition (Doc. 37), which are incorporated by reference under Fed. R. Civ. P. 10(c), Bomin failed to establish a clear case of hardship or inequity to warrant the exercise of this Court's discretion to stay these proceedings. Moreover, the requested duration of the stay – during the pendency of the *COSCO AUCKLAND* appeal – is indefinite and immoderate warranting the denial of the motion to stay. *Landis v. North Am. Co.*, 299 U.S. 248, 257 (1936); *Robiho v. University Healthcare Sys., L.L.C.*, 2011 WL 4747446 at *4 (E.D. La. 2011) (Africk, J.) Accordingly, the Court should decline to stay these proceedings at this time.

### IV. BOMIN'S FAILURE TO PROPOUND ANY DISCOVERY REQUIRES THE DENIAL OF THE REQUESTED CONTINUANCE UNDER RULE 56(d).

Bomin contends that ING's motion for summary judgment, filed on April 24, 2017, is premature because Bomin has not undertaken any discovery in this matter, pending since November 17, 2015, a period of seventeen months. Bomin readily concedes this. (Doc. 33, p. 3, n. 5.)

Bomin has not pursued any discovery, and thus is not entitled to relief under Rule 56(d) (formerly Rule 56(f)) to belatedly obtain that discovery now. See *McKay v. Novartis Pharm.*

---

[1] In any event, DryLog Bulkcarriers Ltd., claimant for the BULK FINLAND, has filed a separate motion for summary judgment (Doc. 30) to dismiss Bomin's claims against the vessel, which has adopted ING's arguments that established the lack of Bomin's maritime lien or breach of contract. Bomin failed to file any opposition to that motion for summary judgment by the deadline of May 16, 2017.

*Corp.*, 751 F.3d 694, 700 (5th Cir. 2014); *Beattie v. Madison Co. School Dist.*, 254 F.3d 595, 606 (5th Cir. 2001).  Even though more time is available for discovery under the Scheduling Order, that alone does not support granting a motion under Rule 56(d) where the requesting party has not propounded any discovery.  *St. Bernard Parish v. Lafarge N. Am., Inc.*, 550 Fed. Appx. 184, 187 (5th Cir. 2013).  Similarly, in light of Bomin's lack of discovery, this Court need not consider whether Bomin needs additional discovery to create a genuine issue of fact.[2]  *Beattie* at 606.

Bomin has represented that there was an implicit agreement by ING to not undertake any discovery or to file any dispositive motions during the pendency of the Fifth Circuit appeal in *Valero Marketing & Supply Co. v. M/V ALMI SUN*, No. 16-30194 (5th Cir.).  To the contrary, the parties have participated in discovery by exchanging initial and supplemental disclosures.[3]

It blinks reality for Bomin to claim it has not had the opportunity to propound interrogatories and document requests to either ING or DryLog.  DryLog filed its answer to the verified complaints of ING and Bomin on January 8, 2016.  (Docs. 17 & 18.)  Bomin simply chose not to undertake any discovery during the intervening fifteen (15) months between DryLog's answer and ING's motion for summary judgment.  Bomin's failure to undertake discovery was at its own risk.  *Beattie*, 254 F.3d at 606.

## V.    CLAUSE L.4 OF THE OW TERMS AND CONDITIONS DOES NOT VEST BOMIN WITH A MARITIME LIEN AS A MATTER OF SETTLED LAW.

Bomin argues that Clause L.4 of the OW Terms and Conditions vests Bomin with a maritime lien against the BULK FINLAND.  This argument has been expressly rejected in other

---

[2]    To the extent the Court concludes that Bomin should be entitled to discovery, ING requests the Court to limit discovery as set forth in greater detail in pages 9 through 11 of ING's opposition memorandum (Doc. 37) to Bomin's motion to stay.  (Doc. 34.)

[3]    Attached as Exhibit A are ING's Initial Disclosures issued on March 8, DryLog's Initial Disclosures issued on March 24, ING's First Supplemental Disclosures issued on April 12; and, Bomin's Initial Disclosures issued on April 12.

orders granting summary judgment. *ING Bank N.V. v. M/V TEMARA*, 203 F. Supp. 3d 355, 365 – 66 (S.D.N.Y. 2016) (hereafter "*TEMARA*"), *appeal pending*; *Aegean Bunkering (USA) LLC v. M/V AMAZON*, 2016 WL 4471895 at *11-*12 (S.D.N.Y. 2016) (hereafter "*AMAZON*"), *appeal pending*. As an initial matter, "[m]aritime liens may arise only by operation of law" and cannot be created by contract. *BIRD OF PARADISE*, 72 U.S. 545, 555 (1866); *Newell v. Norton*, 70 U.S. 257, 262 (1865); *Valero Marketing & Supply Co. v. M/V ALMI SUN*, 2015 WL 9459971 at *8 (E.D. La. 2015) (Brown, J.), *appeal pending*; *TEMARA* at 365; *AMAZON* at *11. Accordingly, because Bomin supplied bunkers to the BULK FINLAND pursuant to its contract with OW USA (and not a person authorized by the owner, charterer, subcharterer or their agents), Bomin cannot satisfy the statutory requirements of the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31341 *et seq*. Clause L.4, a contract provision, cannot supply what the statute clearly denies.

It is undisputed that OW Malta's contract with Tatsuo to supply bunkers to the BULK FINLAND was subject to OW's Terms and Conditions. Clause L.4(a) of OW's Terms and Conditions provides: "These Terms and Conditions are subject to variation in circumstances where the physical supply of the Bunkers is being undertaken by a third party which insists that the Buyer is also bound by its own terms and conditions." (Doc. 29 – 6, p. 12 of 23, OW Terms and Conditions, cl. L.4(a).) As an initial matter, Bomin did not insist that Tatsuo or OW Malta were bound by Bomin's terms and conditions. Rather, Bomin's terms and conditions applied to Bomin's separate contract with its contractual counterparty, OW USA. To the extent Bomin has argued that its terms and conditions apply to OW Malta or Tatsuo, that argument is contrary to other provisions of the OW Terms and Conditions, as the *TEMARA* and *AMAZON* courts have discussed at length. ING quotes the pertinent passage substituting Bomin for the physical supplier,

OW Malta for the bunker general contractor, and Tatsuo for the party ordering the bunkers in each decision, as follows:

> [Bomin's] reading of Section L.4, while vigorously asserted is fundamentally incorrect.  The interpretation [Bomin] advances is at odds with both a number of specific provisions in the OW Bunker Terms and Conditions and the overall structure of that contract.  Moreover, even if one were to temporarily accept [Bomin's] interpretation of the contract for the purposes of argument, there is no evidence in the record which could support the other factual inferences necessary for [Bomin] to succeed on this theory.
>
> The OW Bunker Terms and Conditions are quite clear that they set out a carefully specified contract between two parties, the Buyer ([Tatsuo]) and the Seller ([OW Malta]).  It is not the kind of agreement that anticipates unforeseen future amendment; for instance, near the top of the document section A.3 provides that "[g]eneral trading conditions of another party will not apply, unless accepted in writing by OWB."  The Terms and Conditions define "Agreement" as "the concluded terms and conditions for the sale / purchase of the Bunkers," and then go on to set out the specific steps the parties must complete in order to reach that conclusion.  Nowhere in the sequence laid out in the Terms and Conditions is there a stage that anticipates that a third party may alter the agreement.
>
> The OW Bunker Terms and Conditions also set forth payment terms in section I that are inconsistent with [Bomin's] interpretation of section L.4.  As with the rest of the agreement, the relevant identified parties are the Buyer and the Seller.  Importantly, per section I.2, the payment required of the Buyer "shall be made in full without set – off, counterclaim, deduction and/or discount."  This specific provision, which in the contract at issue required [Tatsuo] to pay [OW Malta] and no other entity, cannot be reconciled with [Bomin's] argument that a different portion of the Terms and Conditions allows [Bomin] to step into OW Bunker's shoes and substitute its own payment terms.  Such an agreement would result in the kind of set-off of [Tatsuo's] obligations to [OW Malta] that the Terms and Conditions specifically prohibit.
>
> The language in section L.4 must be read against this overall structure and specific contrary provisions within the OW Bunker Terms and Conditions.  L.4 creates an exception "where the physical supply of the fuel is being undertaken by a third party" and where there are "terms and conditions imposed by the third party on the Seller."  The overall structure of the Terms and Conditions, and in particular the requirement in section A.3 that other parties' trading conditions apply only when "expressly accepted in writing," indicate that the condition that terms by "imposed" requires more than those terms simply being referenced as applicable.  Likewise, the requirement that the third party "insist[ ] that the Buyer is also bound by its own terms and conditions" indicates, that for L.4 to apply the supplier must have specifically referenced the Buyer, [Tatsuo].  As discussed above, [Bomin's]

6

>   >   contracts and terms do not reference [Tatsuo] or any entity in its position.  <u>Finally, section L.4 at most reaches conditions that result from an arrangement between the Seller, [OW Malta], and a third party.  As discussed above, there is no arrangement directly between [OW Malta] and [Bomin]; all of [Bomin's] arrangements were with OW USA</u>.

*TEMARA*, 203 F. Supp. 3d at 365 – 66 (emphasis added); *AMAZON* at *11-*12 (emphasis added).

No reported decision, even the outlier decision of *Martin Energy Services, LLC v. M/V BRAVANTE IX*, 2017 WL 373449 (N.D. Fla. 2017), *appeal pending*, (discussed briefly below), has concluded Clause L.4 provides the physical supplier with a maritime lien against the vessel. Accordingly, Bomin's proffered interpretation of Clause L.4 must be rejected.

## VI.  NEITHER OW MALTA NOR OW USA WERE AGENTS OF OR AUTHORIZED BY THE BULK FINLAND TO ORDER FUEL FROM BOMIN.

Bomin asserts without any factual support that its contractual counterparty, OW USA, and OW Malta acted simultaneously as both Tatsuo and Bomin's agents for the supply of bunkers to the BULK FINLAND.  (Doc. 33, pp. 11 – 12.)  However, "[a]gency is never presumed; it must be shown affirmatively, and the party who asserts the existence of an agency relationship has the burden of proving it."  *ALMI SUN* at *11 (quoting *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1296 (5th Cir. 1994)).  See also *TEMARA* at 363; *AMAZON* at *7.  Because ING does not bear the burden of proof on the issue of agency, summary judgment is properly entered by ING merely pointing out that there is no evidence to support an agency relationship between OW Malta and Tatsuo as well as OW Malta and OW USA.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993).

The three operative contracts (the Tatsuo – OW Malta Sales Order Confirmation; the OW Malta – OW USA Purchase Order Confirmation; and, the OW USA – Bomin confirmation) are separate contracts to supply bunkers to the vessel.  The fuel prices vary from one contract to

7

another.  Each step in this supply chain involved a separate contract, in which neither OW Malta nor OW USA were agents of the BULK FINLAND interests.  *O'Rourke Marine Servs. L.P., L.L.P. v. M/V COSCO HAIFA*, 179 F. Supp. 3d 333, 338 (S.D.N.Y. 2016), *appeal pending*.

There is no provision in the Tatsuo – OW Malta Sales Order Confirmation or OW's Terms and Conditions that indicates OW Malta was acting as Tatsuo's agent or possessed the authority to bind Tatsuo to any agreement.  *TEMARA*, 203 F. Supp. 3d at 360; *AMAZON* at *8.  Similarly, the OW USA – Bomin contract does not disclose OW Malta or Tatsuo as the principal; the only parties identified in the sales confirmation and subsequent invoice were OW USA and Bomin.  *TEMARA* at 364 – 65; *AMAZON* at *9.  Likewise, there is no agency relationship in which Bomin is identified as the principal or OW USA, OW Malta or Tatsuo.

The respective invoices issued on October 16, 2014 by OW USA to OW Malta and OW Malta to Tatsuo contained different prices for the same quantities of fuel.  The subsequently issued October 22, 2014 invoice by Bomin to OW USA also contained different prices for the same quantities of fuel appearing on the OW USA invoice and the OW Malta invoice.  These separate transactions do not evince any agency arrangement between Tatsuo and OW Malta, OW Malta and OW USA, or OW USA and Bomin.  *TEMARA*, *AMAZON*, and *O'Rourke*, *supra*.

It is undisputed that neither OW Malta nor OW USA fall within any category of those entities presumed to have authority to bind the vessel to a maritime lien, as set forth in 46 U.S.C. § 31341(a).  Thus, Bomin can only establish agency / authority *via* evidence that there was actual authority or apparent authority.  Bomin has submitted none.

To establish the actual authority of OW Malta or OW USA, Bomin must establish explicit permission from the BULK FINLAND interests to act on their behalf.  *World Fuel Services Trading, DMCC v. M/V HEBEI SHIJIAZHUANG*, 12 F. Supp. 3d 792, 802 (E.D. Va. 2014), *aff'd*

*sub nom., World Fuel Services Trading, DMCC v. Hebei Prince Shipping Co., Ltd.*, 783 F.3d 507 (4th Cir. 2015).  That actual authority also must be conveyed from OW Malta to OW USA.  The Declaration of Claus Mortensen disclaims any actual authority; the three contracts do not establish any actual authority.

Apparent agency hinges on the overt acts of the principal that would indicate an agency relationship.  *Cactus Pipe & Supply Co., Inc. v. M/V MONTMARTRE*, 756 F.2d 1103, 1111 (5th Cir. 1985); *AMAZON* at *8 (citing *Hawkspere Shipping Co., Ltd. v. Intamex, S.A.*, 330 F.3d 225, 235 (4th Cir. 2003)).  Apparent authority is created as to a third person by conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to the act done on his behalf by the person purporting to act for him.  *MONTMARTRE*, 756 F.2d at 1111.  Because Bomin was the entity to whom apparent authority would have been conveyed, Bomin has no need for discovery to find evidence to support its apparent agency argument.[4]  See *McKay*, 751 F.3d at 700; *St. Bernard Parish*, 500 Fed. Appx. at 187.  Again, Bomin submitted no evidence of any communications to it by either Tatsuo, or OW Malta that OW USA was acting as an agent of the vessel.  There is none.

### VII.  THE *MARTIN ENERGY* DECISION IS CONTRARY TO SETTLED LAW.

Bomin bases its substantive legal arguments concerning its illusory maritime lien on the outlier decision of *Martin Energy Services*, *LLC*, *supra*, to support three non – statutory bases for a maritime lien: (1) equity, (2) contract, and (3) the statutory provisions.  That decision is distinguishable initially as a claim for Rule B attachment of a sister ship, and its reliance on Florida, not federal maritime lien, law to support a *quantum meruit* and contract claims between the owner

---

[4] Similarly, had Tatsuo specifically instructed OW Malta or OW USA to use Bomin, then such evidence necessarily would be in Bomin's possession.  Bomin's failure to produce that evidence underscores this undisputed fact that there was no such designation of Bomin on the party of the BULK FINLAND interests.

of the sister ship and the physical supplier of fuel.

There are no equitable maritime liens; maritime liens are creatures of statute.[5] See *TEMARA*, 203 F. Supp. 3d at 369.  Claims for unjust enrichment or *quantum meruit* cannot be recovered *in rem*, only *in personam*.  *See Kane v. M/V LEDA*, 355 F. Supp. 796, 801 (E.D. La. 1972) *aff'd*, 491 F.2d 899 (5th Cir.), *cert. denied*, 419 U.S. 865 (1974).  As discussed, maritime liens cannot be created by contract.  *BIRD OF PARADISE*, *Newell*, *ALMI SUN*, *TEMARA*, and *AMAZON*, *supra*.  Thus, Bomin's Bunker Receipt, which contained no price provisions and which also was issued after the formation of the contracts between Tatsuo and OW Malta, OW Malta and OW USA and OW USA and Bomin, cannot form the basis for a separate contract between Tatsuo and Bomin, much less a maritime lien in Bomin's favor.  *Clearlake Shipping PTE Ltd. v. O.W. Bunker (Switzerland) SA*, _____ F. Supp. 3d _____, 2017 WL 894876 at *10 (S.D.N.Y. 2017), *appeal pending*; *TEMARA* at 367 – 68.  The purported communications to Bomin would also be in Bomin's possession.

In short, because it is undisputed that neither OW Malta nor OW USA were authorized by Tatsuo to obtain fuel on behalf of the vessel, but instead were parties to separate contracts, Bomin simply cannot establish compliance with the statutory provisions of CIMLA.  Accordingly, Bomin has no maritime lien as a matter of law.

## CONCLUSION

For the foregoing reasons, ING Bank N.V. requests this Court to grant its motion, dismissing Bomin Bunker Oil Corp.'s Verified Complaint, with prejudice, at Bomin's costs.

---

[5] Bomin's suggestion that CIMLA was enacted to protect American suppliers is historically inaccurate. "[F]ederal maritime law extended a maritime lien for the provision of necessaries in foreign ports even before the enactment of the [CIMLA], and that the [CIMLA] was intended to provide this remedy to American suppliers *as well*." *Triton Marine Fuels Ltd. SA v. M/V PACIFIC CHUKOTKA*, 575 F.3d 409, 418 (4th Cir. 2009); *Trans – Tec Asia v. M/V HARMONY CONTAINER*, 518 F.3d 1120 (9th Cir.), *cert. denied*, 555 U.S. 1062 (2008).

          Respectfully submitted,

          */s/   James D. Bercaw*
          **JAMES D. BERCAW, #20492**
          **ROBERT J. STEFANI, #19248**
          **LAURA E. AVERY, #35636**
          **KING, KREBS & JURGENS, P.L.L.C.**
          201 St. Charles Avenue, 45th Floor
          New Orleans, Louisiana  70170
          Telephone:  (504) 582-3800
          Facsimile:  (504) 582-1233
          E-Mail:   jbercaw@kingkrebs.com
              rstefani@kingkrebs.com
              lavery@kingkrebs.com

          ***Attorneys for ING Bank N.V.***

## CERTIFICATE OF SERVICE

  I hereby certify that on May 22, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

          */s/   James D. Bercaw*