UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ING BANK N.V.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-5975**<br>**c/w 15-6060** |
| **BULK FINLAND M/V,**<br>**NO. 9691577** | **SECTION: "B"** |

## ORDER AND REASONS

Before the Court are Plaintiff ING Bank N.V.'s ("ING Bank") Motion for Summary Judgment (Rec. Doc. 29), Defendant DryLog Bulkcarriers Limited's ("DryLog") Motion for Summary Judgment (Rec. Doc. 30), Consol Plaintiff Bomin Bunker Oil Corp.'s ("Bomin Bunker") Response in Opposition (Rec. Doc. 33), Bomin Bunker's Response in Opposition (Rec. Doc. 42), ING Bank's Reply (Rec. Doc. 45), ING Bank's and DryLog's Joint Supplemental Memorandum in Support of Renewed Motions for Summary Judgment (Rec. Doc. 56), Bomin Bunker's Supplemental Memorandum in Response in Opposition(Rec. Doc. 57). For the reasons discussed below,

**IT IS ORDERED** that the motions for summary judgment (Rec. Doc. Nos. 29, 30) are **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to lift stay (Rec. Doc. 50) is **DISMISSED**.

**FACTS AND PROCEDURAL HISTORY**

This consolidated matter is made up of two cases. The parties are ING Bank as lead case plaintiff; Bomin as member case plaintiff;

1

and DryLog as long-term charterer of and claimant for defendant *in rem*, BULK FINLAND M/V.

On October 16, 2014, BULK FINLAND was supplied with marine fuel/bunkers in Balboa, Panama. *See* Rec.Doc. 56 at 2. Two weeks before the fuel was actually delivered to the vessel, three separate confirmations/contracts were issued. *See id*. Specifcally, the contractual relationships leading up to the fueling of the vessel were as follow: Tatsuo Consulting Limited ("Tatsuo"), who seems to possibly be the charterer of the vessel, ordered the fuel bunkers from OW Malta; OW Malta then ordered the fuel it agreed to supply to the vessel from O.W. Bunker USA, Inc. ("OW USA"); OW USA then ordered the fuel that OW Malta agreed to supply to the vessel from Bomin. *See id.; see also* Rec. Doc. 29-1 at 5-11. After Bomin physically delivered the fuel to the vessel, Bomin issued its invoice to OW USA; OW USA issued its invoice to OW Malta; and, OW Malta issued its invoice to Tatsuo. *See* Rec.Doc. 56 at 3. Each of the contracts, while separate, were all due on November 14, 2014. *See id*. Tatsuo has not paid OW Malta or ING Bank. *See id*. OW Malta and OW USA filed for bankruptcy before the due date of the invoices. *See id*.

On November 17, 2018, ING Bank filed a verified complaint against BULK FINLAND *in rem* praying for the Rule C arrest of the vessel. *See* Rec. Doc. 29-1 at 4. On November 18, 2015, Bomin filed a verified complaint against BULK FINLAND asserting a maritime lien claim and maritime breach of contract claim. *See id*. On November 23,

2015, this Court consolidated the ING Bank Action with the Bomin Action. *See* Rec. Doc. 8. On January 08, 2016, DryLog filed separate answers to the verified complaints of ING Bank and Bomin. *See* Rec. Doc. Nos. 17, 18.

On April 24, 2017, ING Bank filed a motion for summary judgment. *See* Rec. Doc. 29. On April 28, 2019, DryLog filed a motion for summary judgment. *See* Rec. Doc. 30. On May 2, 2017, Bomin filed a response to ING Bank. *See* Rec. Doc. 33. On June 2, 2017, Bomin filed a response to DryLog. *See* Rec. Doc. 42. On June 19, 2017, ING Bank replied. *See* Rec. Doc. 45. Near the end of June 2017, this matter was stayed. *See* Rec. Doc. Nos. 46, 47.

Recently, on March 8, 2019, the Court renewed ING Bank's Motion for Summary Judgment and DryLog's Motion for Summary Judgment. *See* Rec. Doc. 55. ING Bank and DryLog filed a joint supplemental memorandum in support of their renewed motions for summary judgment to dismiss the verified complaint of Bomin. *See* Rec. Doc. 56. Bomin filed a supplemental brief supporting its original response to the motions for summary judgment. *See* Rec. Doc. 57. ING Bank and Dry Log filed a joint reply memorandum. *See* Rec. Doc. 62.[1]

---

[1] While the parties filed a joint memorandum in support, it is important to note that DryLog originally filed its own motion for summary judgment. *See* Rec. Doc. 30-1. In its motion, it adopted the arguments contained in ING Bank's motion, except for the statements and allegations that conflict with DryLog's defenses and answers to ING Bank and Bomin's Verified Complaints. *See id*. at 1-3. For example, DryLog does not adopt ING Bank's contention, in various places, that: (1) Tatsuo was the charterer of the M/V BULK FINLAND when Tatsuo allegedly ordered the subject bunkers from OW Malta, the implication being that Tatsuo's alleged relationship with OW Malta (and/or some other OW entity through which ING claims to be an assignee) may be presumed to giving rise to a maritime lien over the M/V BULK FINLAND within the meaning of 46 U.S.C. § 31341; and (2)the M/V BULK FINLAND

3

**LAW AND ANALYSIS**

    **A. Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). *See also* T*IG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S.

---

and/or DryLog are bound and obligated jointly and severally to the OW entities' sales order confirmation and/or to their terms and conditions posted online. *See id*. at 1-2.

at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the [non-movant]." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

**B. Bomin Does Not Have a Maritime Lien Against BULK FINLAND**[2]

The purpose of a maritime lien is to enable a vessel to obtain necessaries to continue operation by giving a temporary underlying pledge of the vessel which will hold until payment can be made. *See Lake Charles Stevedores, Inc. v. Professor Vladimir Popov MV*, 199 F.3d 220, 223 (5th Cir. 1999) citing to *A.L. Veverica v. Drill Barge*

---

[2] Bomin initially sought denial because there were relevant cases on appeal in the Fifth, Second, and Ninth Circuits. However, those cases have been decided. *See NuStar Energy Services, Inc. v. M/V COSCO Auckland*, 2019 WL 192408, at *1 (5th Cir. 2019); *Valero Mktg. & Supply Co. v. M/V Almi Sun*, 893 F.3d 290 (5th Cir. 2018); *ING Bank N.V. v. M/V Temara*, 892 F.3d 511 (2nd Cir. 2018); *Bunker Holdings Ltd. v. Yang Ming Liberia Corp.*, 906 F.3d 843 (9th Cir. 2018).

*Buccaneer No. 7*, 488 F.2d 880, 883 (5th Cir. 1974) ("The very purpose of maritime liens is to encourage necessary services to ships whose owners are unable to make contemporaneous payment."). In most instances, maritime liens are created statutorily. *See Lake Charles Stevedores, Inc.*, 199 F.3d at 224 citing to *In re Admiralty Lines, Ltd.*, 280 F. Supp. 601, 604-05 (E.D. La. 1968)("Admiralty law has long ago ceased to create new liens. The only liens recognized today are those created by statute and those historically recognized in maritime law."). To resolve the lien issue in the instant motion, the court must look to the CIMLA , 46 U.S.C. 31342. *See Valero Mktg. & Supply Co. v. M/V Almi Sun*, 893 F.3d 290, 292 (5th Cir. 2018); *Lake Charles Stevedores, Inc.*, 199 F.3d at 224.

Specifcally, the CIMLA, 46 U.S.C. 31342(a)(1), defines the circumstance under which a party is entitled to a maritime lien. This Circuit applies the provisions of the CIMLA strictly. *See Valero Mktg. & Supply Co.*, 893 F.3d at 292 ("We apply the provisions of CIMLA *stricti juris* to ensure that maritime liens are not lightly extended by construction, analogy, or interference."). In relevant part, the CIMLA states that a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner has maritime lien on the vessel. *See* 46 U.S.C. § 31342(a)(1).

It is undisputed here that the fuel bunkers are necessaries and Bomin provided the fuel bunkers to BULK FINLAND. The issue here is

whether Bomin furnished the necessaries to BULK FINLAND on the order of the owner of the vessel or a person authorized by the owner.

The persons presumed to have authority to procure necessaries on the vessel's account are the owner, the master, a person entrusted with the management of the vessel at the port of supply, an officer or agent appointed by the owner, a charterer, an owner *pro hac vice*, or an agreed buyer in possession of the vessel. *See* 46 U.S.C. § 31341. "It is not unusual for an entity supplying necessaries to a vessel to lack privity of contract with the owner of that vessel, and instead contract with an intermediary." *Valero Mktg. & Supply Co.*, 893 F.3d at 293.

The facts concerning the chain of contractual relationships are undisputed; the terms and conditions of each contract in the chain are undisputed; the dates of the orders and confirmations are undisputed. Bomin, acting as a sub-subcontractor, took orders for the fuel from OW USA. There is no material evidence that the owner of BULK FINLAND selected or intended that Bomin act as a sub-subcontractor and physically deliver the fuel to BULK FINLAND. These undisputed facts show that Bomin furnished the fuel bunkers on the order of OW USA, who is not a person statutorily presumed to have authority to procure necessaries on BULK FINLAND's account or an agent of the same. *See id*. (stating that this Circuit recognizes two lines of cases that deal with these circumstances: the general/subcontractor line of cases and the principal/agent line of

cases). The undisputed facts show that Bomin did not furnish the fuel bunkers to BULK FINLAND on the order of the owner of the vessel or a person authorized by the owner and therefore Bomin does not have a maritime lien against BULK FINLAND.

Furthermore, the reasons that Bomin offers to summarily deny the instant motions for summary judgment are unconvincing.[3] Bomin argues that ING Bank lacks standing to file its Motion for Summary Judgment (and the supplemental memoranda). *See* Rec. Doc. 33 at 1-2; Rec. Doc. 57. ING Bank has standing because the advisory comments of F.R.C.P. 56(a) makes it clear that summary judgment may be requested as to an entire case, a lone claim or defense, or a part of a lone claim or defense. Further, the actions have been consolidated and are being considered as such here.

Bomin does not contest DryLog's standing to bring its motion for summary judgment. DryLog's Motion for Summary Judgment is substantially the same as ING Bank's motion as it adopts ING Bank's arguments and asks the Court to dismiss Bomin's Verified Complaint.

Bomin argues that the motions for summary judgment are premature because "there is still significant and critical discovery to be taken . . .." Rec. Doc. 57 at 1. The only discovery that has occurred is the parties' exchange of initial disclosures. The Court is not persuaded that discovery beyond clear and unambiguous contractual

---

[3] Bomin argues that the Court should consider DryLog's Motion to Amend Answers to Allow Interpleader (Rec. Doc. 27) before considering the instant motions for summary judgment. See Rec. Doc. 57 at 2; Rec. Doc. 43. The Court has not renewed that motion. Even if it had, this Order would moot the motion to amend answers.

8

terms and initial disclosures would reap fruitful evidence relevant to the issue at hand. Bomin seeks discovery of facts that are, for the most part, immaterial to instant motions and oppositions to same. For example, Bomin lists "[w]hether Tatsuo had knowledge that Bomin would physically supply the subject bunkers to the Vessel[.]". *Id.* at 8. This Circuit has held that "mere awareness does not constitute authorization under the CIMLA." *See NuStar Energy Services, Inc. v. M/V COSCO Auckland*, 2019 WL 192408 *1, *2 (5th Cir. 2019) citing to *Valero Mktg. & Supply Co.*, 893 F.3d at 295.

Bomin refers to three cases to support additional discovery: *Martin Energy Servs., LLC v. M/V Bourbon Petrel*, 2018 U.S. Dist. LEXIS 198285 (E.D. La. 2008)(Fallon, J.); Summary Order, Remand, U.S. Court of Appeals, Second Circuit in 17-4028-CV *NCL (Bahamas) Ltd. v. O.W. Bunker USA, Inc.*, December 2018; and *Canpotex Shipping Services et al. v. Marine Petrobulk, et. al.*, Federal Court of Canada, Dock: T-109-15, Citation: 2018 FC 957 (September 2008). *See* Rec. Doc. 57 at 2-7. Of the three cases, only one is from this Court. The Martin Energy Services, LLC case is distinguishable from the instant facts and issues. Specifically, the Court held that an entity authorized to bind the vessel controlled the selection of the physical supplier. *See Martin Energy Servs., LLC v. M/V Bourbon Petrel*, 2018 U.S. Dist. LEXIS 198285 *1, *2 (E.D. La. 2008)([E]ach time [physical supplier] fuel was supplied, O.W. Bunker presented [authorized entity] with two bids — one from [the physical supplier]

and one from Stone Oil, with the price quoted by each. In all three instances, the authorized entity instructed O.W. Bunker to choose the physical supplier's lower bid).

Furthermore, Bomin relies on two other cases in an attempt to persuade the Court that certain contractual terms entitle it to a maritime lien. *See* Rec. Doc. 57 at 4-6. The Court is not convinced as maritime liens are created statutorily not by contract. *See Lake Charles Stevedores, Inc.*, 199 F.3d at 224; *see also ING Bank N.V. v. M/V Temara*, 892 F.3d 511 (2nd Cir. 2018) (rejecting similar argument). More importantly, the Court is not bound by those cases due to Fifth Circuit authorities cited in this opinion.

As discussed earlier and in accordance with 46 U.S.C. § 31342(a), binding and more relevant Fifth Circuit cases have substantially similar facts and issues here. *See NuStar Energy Services, Inc.*, 2019 WL 192408, at *1, *2; *Valero Mktg. & Supply Co.*, 893 F.3d at 292-5; *Lake Charles Stevedores, Inc.*, 199 F.3d at 229. Accordingly, Bomin's Verified Complaint is dismissed.

New Orleans, Louisiana, this 26th day of April, 2019.

_____
SENIOR UNITED STATES DISTRICT JUDGE